[No. A132664. First Dist., Div. Five. June 14, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
ERIK RANGEL, Defendant and Appellant.

COUNSEL

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, René A. Chacón and Bruce Ortega, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

NEEDHAM, J.—Appellant Erik Rangel pled no contest to aggravated assault and active participation in a criminal street gang, and admitted a great bodily injury allegation in connection with the assault count. (Pen. Code, §§ 245, subd. (a)(1), 186.22, subd. (a), & former § 12022.7, subd. (a).)[1] He argues that the charges stemmed from a search of the text messages in his cell phone, the search was unlawful because it was outside the scope of a warrant and his consent, and his motion to suppress under section 1538.5 should have been granted. We conclude that the phone was seized and searched under a valid warrant and that the motion was properly denied, regardless of the scope of his consent.

## I. BACKGROUND

The district attorney filed an information charging appellant with attempted murder, aggravated assault, battery causing serious bodily injury, and active participation in a criminal street gang, along with various allegations for weapon use and the infliction of great bodily injury. (§§ 664, 187, 245, subd. (a)(1), 243, subd. (d), 186.22, subd. (a), & former §§ 12022,

---

[1] Further statutory references are to the Penal Code. Section 12022.7 was repealed and reenacted by Stats. 2010, ch. 711, §§ 4 and 5, without change to subdivision (a).

subd. (b)(1),[2] 12022.7, subd. (a).) Appellant filed a motion to suppress evidence of text messages found on his cell phone, which was seized when officers executed a search warrant at the house where he lived. (§ 1538.5.)

The following evidence was adduced at the suppression hearing: A man was beaten and possibly stabbed in a San Mateo park. San Mateo Police Detective Dutto was assigned to lead the investigation of the crime, which was thought to be gang related. Appellant was identified as a suspect, and a magistrate issued a warrant for his arrest and a search warrant for the house where he lived.

The search warrant authorized the seizure of stabbing instruments, items containing stains or traces of human blood, and "Any and all items which would constitute items commonly known as 'Gang Indicia,' such as items and paraphernalia that would tend to demonstrate the subject[']s on-going gang affiliation including but not limited to graffiti, notebooks, photographs, sketches, poetry, and red clothing. . . . Gang related paraphernalia typically retained by gang members can also appear in other forms, including but not limited to, newspapers, artwork, compact disks, audio and videocassette, cameras, undeveloped film, address books, telephone lists, graffiti collections, and magazines."

Police officers executed the search warrant and found appellant in his bedroom. He was arrested and transported to the police station for an interview. The officers searched appellant's bedroom and seized a number of items, including a cell phone that was on his dresser and had been within his reach when they entered the room. The phone was a "smartphone," i.e., a cellular phone "that has the ability to store data, photographs, [and] videos."

Appellant agreed to speak with Detective Dutto after being advised of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602]. When asked for his telephone number, appellant said his cell phone had been disconnected. Appellant told Dutto that he was with his girlfriend Vanessa on the night of the assault, but claimed that he did not know Vanessa's last name. The following exchange ensued: "[Dutto]: Well, here, help me help you. I know you know your girlfriend's last name. If that's who you were with, that's somebody I can call and confirm that. You know what I mean? [¶] [Appellant]: Uh huh. [¶] [Dutto]: So what's her last name? [¶] [Appellant]: I don't know really. [¶] [Dutto]: What's her number? [¶] [Appellant]: Don't have it. [¶] [Dutto]: You don't have your girlfriend's number? [¶] [Appellant]: I have it but in my phone. I don't remember it. [¶]

---

[2] Section 12022 was repealed and added by Stats. 2010, ch. 711, §§ 4 and 5, without change to subdivision (b)(1).

[Dutto]: It's in your phone? So how do you call her if your phone's disconnected? [¶] [Appellant]: From the house. [¶] [Dutto]: You just look it up in your phone? [¶] [Appellant]: Yeah. [¶] [Dutto]: Is it under Nessa in your phone? [¶] [Appellant]: Huh uh. Vanessa. [¶] [Dutto]: Vanessa. Do you give me permission to look in your phone so I can get her phone number? [¶] [Appellant]: There's personal stuff in there. If you want I can call her and tell her. [¶] [Dutto]: It helps more if I can do it. You know what I mean? Then it makes it look, you know, a little more forthcoming. So could I look in your phone to get her phone number to call her to confirm that's where you were? [¶] [Appellant]: Yeah." Appellant did not tell Dutto he could only look in the contacts or directory section of the phone to find Vanessa's number.

After the interview, Detective Dutto obtained the cell phone that had been seized from appellant's bedroom so he could find Vanessa's telephone number and track down evidence about appellant's alibi. Dutto turned on the phone and saw the word "Pesado," which he recognized as appellant's nickname. He clicked on a file that showed a list of text messages and read a text conversation with "Nessa" that appeared to link appellant to the assault. Dutto then read all the other text message conversations that he could find in the phone, and concluded that two of them were related to the case. After reading the text messages, which he had located within a minute of turning on the phone, Dutto went to the phone's contacts list and began looking for names that had been mentioned during the investigation and appellant's interview.

Detective Dutto had examined hundreds of cell phones in the course of his duties and knew that text messages sometimes contained phone numbers. In this particular phone, he could retrieve the contact information for "Nessa" by clicking the cursor over her name as it appeared in the text message. Dutto did not remember whether he obtained Vanessa's telephone number from the text message itself or by going to the contacts list, but he knew he did not need to read the content of the text messages to obtain her number.

Defense counsel argued that evidence of the text messages should be suppressed because the cell phone was outside the scope of the search warrant. He additionally asserted that when appellant consented to Dutto's searching the phone for Vanessa's number, that consent was necessarily limited to the contacts list and did not allow Dutto to read the substance of his text messages. The prosecutor responded that (1) the warrant's reference to telephone lists and gang indicia encompassed the cell phone and authorized its seizure and search; (2) appellant's consent to the search of his phone was not limited to any particular data on the phone and extended to text messages; and (3) Dutto was authorized to read the text messages as a search incident to a lawful arrest.

The trial court denied the motion to suppress. It concluded that the term "telephone lists," as used in the search warrant, encompassed the seizure of a cell phone because cell phones contain telephone lists. It also found that appellant had consented to Detective Dutto's search of the phone. The court did not decide whether the search was authorized as incident to a lawful arrest.[3]

Following the denial of his suppression motion, appellant entered his no contest plea and received a seven-year prison sentence as specified in his plea agreement.

## II. STANDARD OF REVIEW

"The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." (*People v. Glaser* (1995) 11 Cal.4th 354, 362 [45 Cal.Rptr.2d 425, 902 P.2d 729].) In cases where the facts are essentially undisputed, we independently determine the constitutionality of the challenged search or seizure. (*People v. Balint* (2006) 138 Cal.App.4th 200, 205 [41 Cal.Rptr.3d 211] (*Balint*).)

## III. DISCUSSION

Appellant argues that the seizure of the cell phone was unauthorized because the search warrant did not specifically include cell phones in its list of property to be seized. Citing *U.S. v. Bridges* (9th Cir. 2003) 344 F.3d 1010, he relies on the rule that a warrant must particularly describe the place to be searched and the items to be seized, so as to "prevent[] the seizure of one thing under a warrant describing another." (*Id.* at p. 1016.) Although couched as a challenge to the warrant's particularity, appellant's complaint is not that the warrant was unclear, overly broad, or ambiguous, but that the officers exceeded its scope when they seized his phone and later searched it. (See *Balint, supra*, 138 Cal.App.4th at p. 207.)

■ "The scope of a warrant is determined by its language, reviewed under an objective standard without regard to the subjective intent of the issuing magistrate or the officers who secured or executed the warrant. [Citations.] Phrased differently, 'the scope of the officer's authority is determined from the face of the warrant . . . .' [Citation.] As many courts have

---

[3] The People concede on appeal that under *People v. Diaz* (2011) 51 Cal.4th 84 [119 Cal.Rptr.3d 105, 244 P.3d 501], the doctrine of search incident to a lawful arrest does not apply to the facts of this case.

observed, 'officers executing a search warrant are "required to interpret it," and they are "not obliged to interpret it narrowly." ' [Citation.] To satisfy the objective standard, the officer's interpretation must be reasonable." (*Balint, supra,* 138 Cal.App.4th at p. 207.)

We agree with the trial court that the warrant in this case allowed the seizure of appellant's cell phone. "In determining whether seizure of particular items exceeds the scope of the warrant, courts examine whether the items 'are similar to, or the "functional equivalent" of, items enumerated in the warrant, as well as containers in which they are reasonably likely to be found.' " (*Balint, supra,* 138 Cal.App.4th at p. 208; see *People v. Varghese* (2008) 162 Cal.App.4th 1084, 1101 [76 Cal.Rptr.3d 449] (*Varghese*).)

■ In an analogous context, a search warrant authorizing the seizure of items showing a person's dominion and control over the premises searched has been held to authorize the seizure of a laptop computer even though "computers" were not listed in the warrant as a type of item to be seized. (*Balint, supra,* 138 Cal.App.4th at pp. 205–210; *Varghese, supra,* 162 Cal.App.4th at pp. 1100–1103.) "[L]aptop computers are commonly used for personal correspondence, electronic payment of bills, and storing other information analogous to the examples listed in the warrant that are responsive to the dominion and control principle. Under the functional equivalency test, the fact these documents are in digital form does not bar officers from seizing the evidence. . . . [A]n open laptop computer is likely to serve as a container of information tending to establish dominion and control of the residence in which it is found." (*Balint,* at p. 210.)

In the case before us, the list of property to be seized under the warrant includes "[a]ny and all items" constituting "Gang Indicia" and states, "Gang related paraphernalia typically retained by gang members can also appear in other forms, including but not limited to, newspapers, artwork, compact disks, audio and videocassette, cameras, undeveloped film, address books, telephone lists, graffiti collections, and magazines." A smartphone such as appellant's is akin to a personal computer because it has the capacity to store people's names, telephone numbers and other contact information, as well as music, photographs, artwork, and communications in the form of e-mails and messages—all of which may amount to gang indicia, depending on their content. (See *People v. Diaz, supra,* 51 Cal.4th at pp. 104–105 (dis. opn. of Werdeger, J.) [describing capabilities of smartphones].) As such, appellant's phone was the likely container of many items that are the functional equivalent of those specifically listed in the warrant. (See *U.S. v. Aguirre* (5th Cir. 2011) 664 F.3d 606, 614–615 (*Aguirre*) [cell phone was properly seized under warrant that did not specifically list cell phones among the items to be seized; "the cellular text messages, directory and call logs . . . can fairly be

characterized as the functional equivalents of several items listed in Attachment A, including correspondence, address books and telephone directories"].) It was properly seized by police when the warrant was executed.

■ We next consider whether the warrant authorized Detective Dutto to read appellant's text messages. We conclude that it did. Federal cases have recognized that "a second warrant to search a properly seized computer is not necessary 'where the evidence obtained in the search did not exceed the probable cause articulated in the original warrant.' " (*U.S. v. Evers* (6th Cir. 2012) 669 F.3d 645, 652 (*Evers*); see *U.S. v. Upham* (1st Cir. 1999) 168 F.3d 532, 535 (*Upham*); *U.S. v. Gregoire* (8th Cir. 2011) 638 F.3d 962, 967–968.) Appellant does not contest that the affidavit supporting the warrant supplied probable cause to believe that gang indicia would be found at his residence, including evidence of the gang-related assault appellant was suspected of committing. (See *Evers*, at p. 653.) The text messages seized during Dutto's search of appellant's phone were related to that gang-related crime, and their suppression was not required under the exclusionary rule.

■ Appellant notes that in the *Balint* and *Varghese* cases, cited above, the police obtained a second warrant to search the contents of computers that were properly seized during a warrant search. (*Balint, supra,* 138 Cal.App.4th at p. 205; *Varghese, supra,* 162 Cal.App.4th at pp. 1098, 1103.) That a second warrant was sought by the officers in those cases, possibly to "immunize the search from later Fourth Amendment claims" (*Balint,* at p. 210), does not mean a second warrant was required here. The search warrant, supported by probable cause, authorized the police to search appellant's house and seize gang indicia of any sort. Such indicia could logically be found in appellant's cell phone. A search of that phone to extract such information was contemplated by the warrant. (See *Upham, supra,* 168 F.3d at p. 536 [warrant authorized seizure of pornographic images; because the images were stored in a computer, offsite extraction of those images after seizure of computer was contemplated by warrant]; *Aguirre, supra,* 664 F.3d at pp. 609, 614–615 [officer properly read text message on cell phone found during warrant search, because it was the equivalent of the records and documentation of drug sales described in the warrant].)

We express no opinion as to whether we would reach a different result if the text messages retrieved by Detective Dutto pertained to criminal conduct unrelated to either gang activity or the crime that was under investigation. Nor do we decide whether appellant consented to the search of his text messages.

## IV. DISPOSITION

The judgment is affirmed.

Simons, Acting P. J., and Bruiniers, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 26, 2012, S204233. Kennard, J., was of the opinion that the petition should be granted.