Filed 10/29/20  Quality Loan Service Corp. v. The Bank of New York Mellon CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| QUALITY LOAN SERVICE CORP.,<br>    Petitioner,<br><br>        v.<br><br>THE BANK OF NEW YORK MELLON<br><br>    Claimant and Respondent;<br><br>CRAIG H. PETRIK,<br><br>    Claimant and Appellant, | G058047<br><br>(Super. Ct. No. 30-2018-01039366)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, James Di Cesare, Judge.  Reversed.

Craig H. Petrik in pro. per., for Defendant and Appellant.

Tiffany & Bosco, and Megan E. Lees, for Plaintiff and Respondent.

\*        \*        \*

Proceeds remaining after a home foreclosure sale were deposited with the Orange County Superior Court when appellant-homeowner Craig H. Petrik disputed the validity of a claim by respondent Bank of New York Mellon[1] (Mellon), based on an assigned trust deed. The court ordered the proceeds released to Mellon because it had priority based on the trust deed.

Among other contentions, Petrik challenges the sufficiency of the evidence to support Mellon's claim, arguing it was based solely upon inadmissible hearsay. We agree and therefore reverse the court's order releasing the funds to Mellon.

I

FACTS AND PROCEDURAL HISTORY

In 2006, Craig Petrik and Jeanne Petrik (collectively, the Petriks) signed a trust deed to secure a $999,000 home equity line of credit (HELOC). The lender was identified as Countrywide Home Loans, Inc. (Countrywide) and Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary "acting solely as a nominee for" Countrywide.[2] The trust deed's security interest for the HELOC was the Petriks' home (the property).

In 2012, MERS signed an assignment of the trust deed, "assign[ing] and transfer[ring] . . . all its right, title, and interest" in the trust deed to Mellon, "as successor

---

[1] As trustee for the certificateholders of the CWHEQ Inc., CWHEQ Revolving Home Equilty Loan Trust, Series 2006-H.

[2] MERS "was formed by a consortium of residential mortgage lenders and investors to streamline the transfer of mortgage loans and thereby facilitate their securitization." (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 931, fn. 7.) "'[It] administers a national registry of real estate debt interest transactions. Members of the MERS System assign limited interests in the real property to MERS, which is listed as a grantee in the official records of local governments, but the members retain the promissory notes and mortgage servicing rights. . . . Under the MERS System, however, MERS is designated as the beneficiary in deeds of trust, acting as "nominee" for the lender, and granted the authority to exercise legal rights of the lender.'" (*Saterbak v. JPMorgan Chase Bank, N.A.* (2016) 245 Cal.App.4th 808, 816, fn. 6.)

trustee to JPMorgan Chase Bank, N.A., as trustee on behalf of the certificateholders of the CWHEQ Inc., CWHEQ Revolving Home Equity Loan Trust, Series 2006-H its successors and assigns" (the Assignment).

In 2018, the trustee of a senior 2003 trust deed conducted a foreclosure sale of the property. Net proceeds in the amount of $627,515.56 remained after the sale (the surplus funds) and several parties submitted competing claims to the fund, including the Petriks and Mellon. The trustee deposited the funds with the Orange County Superior Court so it could determine the claims' respective priorities per Civil Code sections 2924j, subdivisions (c) and (d), and 2924k.[3]

Mellon supported its claim with a declaration from Nichole Williams, an assistant vice president of Bank of America, N.A. (Bank of America), Mellon's servicer and agent on the Petriks' loan. Williams asserted Mellon authorized her declaration and she based her declaration on "[Bank of America's] business records regarding the loan." Williams explained she had "personal knowledge of [Bank of America's] procedures for creating th[e] types of records" which were "(a) made at or near the time of occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of [Bank of America's] regularly conducted business activities; and (c) it [was] the regular practice of [Bank of America] to make such records." Williams declared Mellon was "the current beneficiary of the [subject] Deed of Trust" and based on her "review of [Bank of America's] business records regarding the [HELOC] . . . the total outstanding obligations due and owing" on the HELOC was $1,220,684.

The Petriks relied on arguments asserted by another claimant, David George, who is not a party to this appeal. George's papers asserted that Williams's declaration was not based on any "firsthand knowledge," Mellon's claim was

---

[3]      All further undesignated statutory references are to the Civil Code.

"fraudulent," "unsupported by any real evidence," and the Assignment was a "sham" because it did not comport with the securitization process for the Petriks' loan. George reasoned that because no one from Bank of America had "any firsthand knowledge of any issue in this matter and therefore, it [was] impossible for [Bank of America] to make any claim [] not based solely upon hearsay."

At the hearing, Petrik offered no argument, instead relying on George's arguments. George asserted three points about Mellon's proffered evidence. First, he asserted there was "no live testimony actually in the record from [Mellon] of anyone with firsthand knowledge of the matter of making the claim" and that Bank of America could not make a claim for Mellon. Second, he asserted the submitted documents were not true and correct copies because they were redacted. Third, George asserted that Mellon "had someone from Bank of America, who had no declaration whatsoever, stating that she had any firsthand knowledge of anything [*sic*]."

The trial court made no express evidentiary rulings and found "[Mellon's] claim ha[d] priority under Civil Code [section] 2924k, based on the [d]eed of [t]rust recorded in 2006 as to the property at issue."

II

DISCUSSION

Petrik's contends Williams's declaration and the accompanying exhibits submitted to support Mellon's claim constituted inadmissible hearsay rendering the evidence insufficient as a matter of law. We agree.

We review the trial court's evidentiary rulings for abuse of discretion. (*City of Ripon v. Sweetin* (2002) 100 Cal.App.4th 887, 900 [abuse of discretion standard applies "'to any ruling by a trial court on the admissibility of evidence'"].) We apply the substantial evidence standard in determining whether the trial court's factual findings are sufficient to support its ultimate determination. (*Integrated Lender Services, Inc. v. County of Los Angeles* (2018) 22 Cal.App.5th 867, 875.)

4

Petrik raised a hearsay objection to the Williams's declaration, although not with the precision of a skilled trial attorney. Nevertheless, the burden of establishing a foundation for a hearsay exception shifted to Mellon. (Evid. Code, §§ 403, 405.) The trial court at the hearing on the competing claims to the surplus funds did not explicitly rule on Petrik's hearsay objection. But it implicitly found Williams's declaration satisfied the business records exception when it relied on William's declaration in determining Mellon was entitled to the funds. Mellon's evidence and its right to the funds rested entirely on Williams's declaration and the foundation she purportedly established for admitting the loan documents, redacted copies of the original HELOC, the trust deed securing it, and its alleged assignment to Mellon.

On the Assignment, Williams asserted "the [d]eed of [t]rust was assigned to [Mellon] pursuant to [the Assignment] recorded in the Official Records of the Orange County Recorder's Office on January 8, 2013, as Document No. 2013000011766. A true and correct copy of the Assignment [] is attached hereto as Exhibit C." (Bold font omitted.) Attached to the declaration and identified as "Exhibit 'C'" is a two page document entitled "ASSIGNMENT OF DEED OF TRUST," purportedly signed by Mercedes Judillis, as an Assistant Secretary for MERS. In her declaration, Williams asserted Mellon was "the current beneficiary of the subject [d]eed of [t]rust" and that, per her "review of [Bank of America's] business records regarding the [HELOC] . . . the total outstanding obligations due and owing" under it was $ 1,220,684.

Williams's reliance on the document assigning the deed of trust to Mellon and signed by someone else constitutes hearsay because it is an out-of-court statement offered to prove the truth of the matter asserted, i.e., MERS, as the nominee, executed the Assignment to Mellon, making it the present beneficiary under the deed of trust. Williams also claimed Mellon designated her employer, Bank of America, to administer the loan. These statements are hearsay. (*Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1375 (*Herrera*) [declaration reciting that Deutsche Bank

5

"'is the present beneficiary under' the 2003 deed of trust" is hearsay]; *Poseidon Development, Inc. v. Woodland Lane Estates, LLC* (2007) 162 Cal.App.4th 1106, 1117 [documents showing substitution of a party as "'the present holder of beneficial interest'" under deed of trust constitute hearsay].) Of course, hearsay evidence is inadmissible unless the opposing party demonstrates it fits within a statutorily recognized exception.

Williams's declaration is deficient in another respect. Simply put, Williams was not Mellon's custodian of record and did not assert she had knowledge how Mellon prepared and kept its records. Nor did she establish she was otherwise qualified to identify the documents and explain how they were prepared. Williams states "[t]he information in this declaration is taken from [Bank of America's] business records regarding the loan described herein." She attests she has personal knowledge how Bank of America creates its records, but the records relied on by Mellon to support its claim were not created by Bank of America; it merely had custody of the loan documents, presumably as Mellon's loan administrator. The declaration provides no evidence Williams had personal knowledge of how Mellon, MERS, or Countrywide created and kept the loan documents relied on by Mellon to establish its claims.

Mellon contends the Assignment, as one of the exhibits attached to Williams's declaration, was admissible under Evidence Code section 1271's business records exception to the hearsay rule. That section states: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if: [¶] (a) The writing was made in the regular course of a business; [¶] (b) The writing was made at or near the time of the act, condition, or event; [¶] (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and [¶] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness." (Evid. Code, § 1271.)

Mellon relies on *Unifund CCR, LLC v. Dear* (2015) 243 Cal.App.4th Supp. 1, 8 (*Unifund*), which liberally construed the business records exception to affirm a

6

judgment in favor of an assignee-debt collector. There, the original creditor sold the defendant's unpaid credit card account to another creditor, who assigned the account to Unifund. In an action to collect the debt, Unifund submitted a declaration from Unifund's custodian of records under the business records exception. The custodian had personal knowledge of the record keeping systems and practices of Unifund, but the records Unifund submitted included records of defendant's indebtedness to the original creditor. The appellate division concluded the computerized ledgers reflecting the defendant's debt on the original credit card account was admissible "[s]ince the description coincides with our commonsense understanding of how credit card records are electronically generated." (*Id*. at pp. 7-8.)

In a similar case, the appellate division in *Sierra Managed Asset Plan, LLC v. Hale* (2015) 240 Cal.App.4th Supp. 1 (*Sierra*) applied the traditional understanding of the business records exception. There, Sierra acquired the defendant's credit card account through a series of assignments and sued to collect on the defendant's unpaid balance. Sierra submitted a declaration from its authorized agent and custodian, along with various documents showing account assignments originating from Citibank, the account agreement, and account statements reflecting the defendant's unpaid balance. (*Id*. at pp. 4, 8.) Sierra had not created the documents it submitted with its declaration and the declarant was not the authorized custodian of the documents of the original creditor, Citibank. (*Id*. at pp. 3, 8.) The appellate division concluded the records established only that Sierra, "as assignee from the creditor, received records originating from Citibank concerning the account in question. This falls short of the foundation necessary for admission of the business records as against a hearsay objection." (*Id*. at pp. 8-9.)

The appellate division in *Midland Funding LLC v. Romero* (2016) 5 Cal.App.5th Supp. 1 faced the same business records issue that confronted the courts in *Unifund* and *Sierra*. Midland, as the successor creditor, submitted the declaration of its

7

custodian of records, who declared the original creditor's records it attached to the declaration were trustworthy and accurate because the original creditor was "required by law to keep careful records of the account or suffer business loss." (*Id*. at p. 4.) The appellate division analyzed the contrasting applications of the business records exception found in *Unifund* and *Sierra*. The court in *Midland* concluded *Unifund* incorrectly "relaxed the requirements under the Evidence Code regarding the business records exception to hearsay." (*Id*. at p. 9.) Following the traditional analysis utilized in *Sierra*, the *Midland* court concluded that Midland, as successor trustee creditor, established the "documents were part of [Midland's] business records, but did not satisfactorily establish those documents were a part of the prior creditor's business records under Evidence Code section 1271. That is, there was no evidence regarding the mode of preparation or other information indicating trustworthiness." (*Id*. at p. 9.)

We follow the rationale of *Sierra* and *Midland* and conclude Williams's declaration failed to establish the various loan documents, including the Assignment, fell within the business records exception to the hearsay rule. Mellon failed to show how the Assignment was prepared or what "sources of information and method and time of preparation . . . indicate its trustworthiness." (Evid. Code, § 1271, subd. (d).) There are no specific facts connecting the declaration's general references to Bank of America's "business records" with MERS's purported assignment of its "right, title, and interest" in the Petriks' 2006 trust deed to Mellon in 2012, seven years before Mellon submitted Williams's declaration.

Williams's declaration relied on the Assignment to establish that Mellon was the "current beneficiary of the [d]eed of [t]rust" based on her "review of [Bank of America's] business records regarding the loan." As in *Midland*, Williams's declaration showed no more than the documents were part of Bank of America's business records, but failed to establish how Countrywide, MERS, or Mellon prepared those records. Nor did it present other information showing those documents were trustworthy. The lack of

8

specificity concerning these "business records" amounts to an insufficient conclusory attempt to establish a valid assignment to Mellon, independent of the Assignment. (See *People v. Reyes* (1974) 12 Cal.3d 486, 503 [business records exception requires "a record of an act, condition or event; a conclusion is neither an act, condition or event"].)

In sum, Mellon failed to establish the business records exception applied to the Assignment and therefore the trial court erred in implicitly finding it admissible. Because the Assignment was the only evidence offered to establish Mellon's right to the surplus funds, we conclude there was insufficient evidence to support the court's ruling in Mellon's favor. (See *Herrera*, *supra*, 196 Cal.App.4th at p. 1375 [factual matters stated in disputed recorded documents constituted hearsay insufficient to prove a beneficial interest in a deed of trust].)

III

DISPOSITION

The order is reversed and the matter is remanded to the trial court for a new hearing consistent with this court's opinion. Petrik is entitled to his costs on appeal.


ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


THOMPSON, J.


9