[No. D016907. Fourth Dist., Div. One. Aug. 17, 1992.]

CLEOPHUS PRINCE, JR., Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

Counsel

Loren I. Mandel, Alternate Public Defender, and Barton C. Sheela III, Deputy Alternate Public Defender, for Petitioner.

No appearance for Respondent.

Edwin L. Miller, Jr., District Attorney, Paul M. Morley, Rick Clabby and Craig E. Fisher, Deputy District Attorneys, for Real Party in Interest.

## Opinion

**TODD, J.**—Cleophus Prince petitions for a writ of mandate or prohibition after the trial court ordered prosecution access to defense deoxyribonucleic acid (DNA) testing of semen obtained from a vaginal swab of a murder victim.

### Background

In 1990, Tiffany Shultz, Janene Weinhold, Holly Tarr and Pamela and Amber Clark were found murdered in their homes in the general Clairemont area. Police believe Prince is responsible for the five killings and a sixth homicide in another area of San Diego.

On February 16, 1990, police officers responded to a report Janene Weinhold had been found murdered in her Clairemont apartment. Investigating officers collected a semen stain from a comforter near the victim's body. San Diego criminalist Larry Turner examined the stain and divided the sample into three parts. He believed each of the parts contained a sufficient sample for DNA typing. He forwarded one of the samples to Cellmark Diagnostics to conduct DNA analysis. He sent a second portion of the semen stain to the FBI laboratory in Washington, D.C., for DNA testing. The FBI reported the sample insufficient in size for matching purposes but perhaps usable to exclude suspects. During 1990 and early 1991, Turner submitted suspects' blood samples to Cellmark for comparison with results of the sample it analyzed. In March 1991 Cellmark told Turner the DNA profile of Cleophus Prince matched the semen sample. The San Diego Police Department retained the third portion of the semen stain. In Turner's opinion, this portion is sufficient to conduct one DNA test of the type performed by Cellmark and the FBI (the RFLP method).

On May 27, 1992, the trial court ordered the remaining comforter semen stain tested by the RFLP method. Prince may select the testing facility

subject to the prosecution's consent. Both parties' forensic experts may be present at the testing and all reports will be made available to both. Prince chose to have Cellmark Diagnostics conduct the third test. Testing of the third portion of the comforter semen stain is currently underway. This order is not being challenged.

Investigators of Weinhold's murder also obtained two vaginal swabs from the victim. Dr. Blake examined the swabs to ascertain whether they contained a sample large enough for testing. He believes there is not a quantity large enough to conduct the same type DNA test conducted on the samples sent to Cellmark and the FBI (RFLP) but one of the swabs contains a large enough sample for multiple tests of a different sort (PCR). At the May 27 hearing, the trial court ordered the evidence on the vaginal swabs be divided between the parties to conduct PCR tests. Each party may observe both tests and will be provided with a report on both. Prince challenges this order.

### DISCUSSION

■ At the outset, the People argue extraordinary relief is unavailable because the issue involves a discretionary determination involving discovery. However, extraordinary relief is appropriate if the trial court's ruling is clearly erroneous as a matter of law and the petitioner will suffer substantial prejudice. (*Schweiger* v. *Superior Court* (1970) 3 Cal.3d 507, 517-518 [90 Cal.Rptr. 729, 476 P.2d 97].) Such is the case here.

■ Relying on *People* v. *Cooper* (1991) 53 Cal.3d 771 [281 Cal.Rptr. 90, 809 P.2d 865], the prosecution argues the Fifth Amendment is not violated because Prince can participate in the testing or not. However, in *Cooper*, the Supreme Court found the trial court did not err in denying a defense request to conduct an independent blood test *which would have consumed the entire sample*. Here, the court found there was enough semen on the swab to conduct two tests but required the defense to allow the People's presence if it chose to conduct a test. At oral argument both parties argued the equally divided swab can produce five tests for each party. The court did not make the order because an independent test would consume the entire sample. *Cooper* is inapposite. However, the privilege against self-incrimination protects only against forcible disclosure of testimonial communications. (*Schmerber* v. *California* (1966) 384 U.S. 757, 761 [16 L.Ed.2d 908, 86 S.Ct. 1826].) No testimonial communication is involved here.

Relying on *People* v. *Griffin* (1988) 46 Cal.3d 1011 [251 Cal.Rptr. 643, 761 P.2d 103], *California* v. *Trombetta* (1984) 467 U.S. 479 [81 L.Ed.2d 413, 104 S.Ct. 2528], and *Arizona* v. *Youngblood* (1988) 488 U.S. 51 [102 L.Ed.2d

281, 109 S.Ct. 333], the prosecution argues because it could have consumed the entire semen sample, Prince is not denied due process by having to disclose the results of a test to the People. ■ We need not decide whether denial of an independent test denies Prince due process or his statutory work product claim since the trial court order deprives Prince of effective assistance of counsel.

The Sixth Amendment of the United States Constitution guarantees " '[i]n all criminal prosecutions, the accused shall [have] the right . . . to have the [a]ssistance of [c]ounsel for his defense.' " (*Gideon* v. *Wainwright* (1963) 372 U.S. 335, 339 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733].) This includes the right to effective assistance of counsel. (*United States* v. *Cronic* (1984) 466 U.S. 648, 655 [80 L.Ed.2d 657, 104 S.Ct. 2039].)

Effective assistance of counsel includes effective assistance during preparation of a case for trial (*Barber* v. *Municipal Court* (1979) 24 Cal.3d 742, 750 [157 Cal.Rptr. 658, 598 P.2d 818]) and requires counsel to have his or her client's blood tested where it may exonerate the client (*In re Sixto* (1989) 48 Cal.3d 1247, 1261 [259 Cal.Rptr. 491, 774 P.2d 164]). Effective assistance of counsel includes the assistance of experts in preparing a defense (*Corenevsky* v. *Superior Court* (1984) 36 Cal.3d 307, 319, 320 [204 Cal.Rptr. 165, 682 P.2d 360]) and communication with them in confidence (*Jones* v. *Superior Court* (1962) 58 Cal.2d 56, 61 [22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213]).

Mentioning both Proposition 8 (Stats. 1982, p. A-186, § 3) and Proposition 115 (Gen. Elec. (June 5, 1990)), the People argue justice requires turning over the test results and disclosure of the truth.

While it is true the goal of the judicial process is to find the truth, allowing the defense to conduct an independent test of the DNA will not unfairly prejudice the People or result in injustice. If the test matches Prince with the crime, defense counsel will not call the expert and the case will proceed on evidence already possessed by the People as if the defense test had not been made. The People will have, at least, four semen test samples. If the defense test excludes Prince, the tester will surely testify and the defense will have to disclose his or her identity and provide any report to the prosecution. (See Pen. Code, § 1054.3, subd. (a); *County of Los Angeles* v. *Superior Court* (1990) 222 Cal.App.3d 647, 654-655 [271 Cal.Rptr. 698].) ■ ■ ■

The trial court erred in preventing Prince from conducting an independent test of its half of the semen from the swab.[1]

Let the extraordinary writ issue. The trial court shall modify its May 27, 1992, order to permit the defense to conduct an independent analysis of its half of the semen from the vaginal swabs. If the defense intends to call a witness from its testing facility at trial, it shall provide the People with the identity of the witness and a copy of the testing report within the time limitation set out in Penal Code section 1054.7.

Kremer, P. J., and Huffman, J., concurred.

---

[1]Relying on *People* v. *Meredith* (1981) 29 Cal.3d 682 [175 Cal.Rptr. 612, 631 P.2d 46] and *People* v. *Superior Court (Fairbank)* (1987) 192 Cal.App.3d 32 [237 Cal.Rptr. 158], the People argue prosecution discovery of defense DNA testing is permissible. In *Meredith*, the defendant was charged with robbery and murder. He told his attorney the victim's wallet was behind his house. The attorney sent an investigator who found the wallet and turned it over to the police. At trial, the prosecution called the investigator who testified where he found the wallet. The Supreme Court held this did not violate the attorney-client privilege. The court said, "whenever defense counsel removes or alters evidence, the statutory privilege does not bar revelation of the original location or condition of the evidence in question." (*People* v. *Meredith, supra,* at p. 695, fn. omitted.)

In *Fairbank* the reviewing court applied *Meredith* to weapons located and altered by the defense.

Under both *Meredith* and *Fairbank*, "an observation by defense counsel or his investigator, which is the product of a privileged communication, may not be admitted unless the defense by altering or removing physical evidence has precluded the prosecution from making that same observation. . . ." (*People* v. *Meredith, supra,* 29 Cal.3d at p. 686.) Here, the swab in question is being divided in half. While each half will be destroyed in the analysis process, the prosecution is not being denied access to any observations of evidence which will be destroyed in the sense that phrase was used in *Meredith* and *Fairbank*.