**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| PARRAKKAMANNIL KOSHY BILJI VARGHESE, | No. 11-55686 |
| *Petitioner-Appellant*, | D.C. No. 3:09-cv-02801-WQH-WVG |
| v. | |
| DOMINGO URIBE, JR., Warden; EDMUND G. BROWN, JR., | ORDER AND AMENDED OPINION |
| *Respondents-Appellees*. | |

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued and Submitted
January 8, 2013—Pasadena, California

Filed June 26, 2013
Amended September 23, 2013

Before: Alex Kozinski, Chief Judge, M. Margaret
McKeown, and Milan D. Smith, Jr., Circuit Judges.

Order;
Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[*]

### Habeas Corpus

The panel affirmed the district court's denial of a 28 U.S.C. § 2254 habeas corpus petition challenging a murder conviction.

Petitioner sought to test the remainder of a blood sample after the prosecution had conducted an initial DNA test, with no obligation to reveal the test results to the prosecution. The panel held that the state trial court's compromise – to have either a neutral laboratory or the defense expert test the blood, but only if the results were made available to both parties – was neither contrary to nor an unreasonable application of clearly established federal law.

### COUNSEL

Todd W. Burns (argued), Burns & Cohan, San Diego, California, for Petitioner-Appellant.

Lynne G. McGinnis (argued), Deputy Attorney General; Kamala D. Harris, Attorney General of California; Julie L. Garland, Senior Assistant Attorney General; Kevin Vienna and Gil Gonzalez, Supervising Deputy Attorneys General, Office of the Attorney General, San Diego, California, for Respondents-Appellees.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**ORDER**

The opinion filed on June 26, 2013, and appearing at 720 F.3d 1100 (9th Cir. 2013), is amended as follows:

1. Slip op. at 10, 720 F.3d at 1106, replace <Where, as here, a state court has no specific legal rule to apply, the state court's decision "is not an unreasonable application of clearly established Federal law."> with <"[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established" by the Supreme Court.>.

2. Slip op. at 11, 720 F.3d at 1107, following <"Government violates the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense." *Id.* at 686.> add <"[E]ven a general standard may be applied in an unreasonable manner," *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007), but the California Court of Appeal did not unreasonably apply *Strickland* and its progeny in affirming the trial court's refusal to allow confidential defense testing of the blood sample.>.

3. Slip op. at 11, 720 F.3d at 1107, delete <articulate more specific principles than

those invoked by Varghese—which, when viewed in their factual circumstances,>.

4.  Slip op. at 11 n.2, 720 F.3d at 1107 n.2, replace <it is not germane to our AEDPA analysis.> with <it is not controlling here. *McCormick* is "relevant persuasive authority," *Himes*, 336 F.3d at 853, but it adds little to Varghese's argument that the state court's decision was objectively unreasonable.>.

5.  Slip op. at 19, 720 F.3d at 1111, delete <The rule established in *Simmons* is inapposite because>.

An amended opinion will be filed concurrently with this order.

With the amended opinion, the panel has unanimously voted to deny the petitions for panel rehearing and rehearing en banc. The full court has been advised of the petition for rehearing en banc, and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petitions for panel rehearing and rehearing en banc are **DENIED**.

**No further petitions shall be entertained.**

# OPINION

M. SMITH, Circuit Judge:

Parakkamannil Koshy Bilji Varghese, a California state prisoner, appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. A jury convicted Varghese of stabbing and murdering his ex-wife's lover. A key piece of evidence in the case was a small blood stain found at the crime scene. The prosecution's initial test of the blood stain showed that it matched Varghese's DNA. Varghese requested the remaining blood sample to conduct a DNA test using his own expert, but without having to disclose the test results to the prosecution, even though a second test would likely consume the remaining blood. The trial court denied Varghese's request and instead offered Varghese the choice of having either an independent laboratory or his own expert test the blood, but only if the test results were made available to both parties. Varghese's counsel refused the trial court's proposal. Varghese appealed, arguing, among other things, that the trial court's ruling violated his right to counsel. In a reasoned decision, the California Court of Appeal affirmed the trial court.

On federal habeas review, Varghese claims that the trial court's ruling regarding the blood sample violated his constitutional rights to counsel and due process. Because, at the time the California Court of Appeal rendered its decision, there was no Supreme Court decision that squarely addressed Varghese's claims, or announced a principle that clearly extended to the circumstances of this case, we hold that the state court's decision was not "contrary to" or an "unreasonable application" of "clearly established Federal law" under 28 U.S.C. § 2254(d)(1). Accordingly, we affirm.

## FACTS AND PRIOR PROCEEDING

### A. Factual Background[1]

In April 2003, Varghese and his wife, Vilia Varghese, separated. Varghese was unhappy with the separation and did not want a divorce. During this period, Vilia began a relationship with Haval Ravin, a physician who ran a fertility clinic.

On November 12, 2004, Ravin was found dead at his home, with multiple stab wounds to his body, including to his neck, abdomen, back, bicep, and testicles. Police officers found several inculpatory pieces of evidence at the crime scene, including a shoe that belonged to Varghese and a matching bloody shoeprint. A critical piece of evidence for the prosecution was a blood spot (Item 19) found near a light switch at Ravin's home. The prosecution's initial DNA test and analysis of the blood spot, conducted by criminalist David Cornacchia of the San Diego Police Department, Forensic Science Section, indicated that Varghese was almost certainly the source of the DNA profile. The probability of selecting an individual, at random, who matched the DNA profile from this blood sample was in the quintillions.

By pretrial motion, Varghese requested an order permitting his expert, Dr. Edward Blake, to test the blood

---

[1] The factual background is principally drawn from the California Court of Appeal's decision in *People v. Varghese*, 76 Cal. Rptr. 3d 449 (Ct. App. 2008). In a habeas proceeding, the findings of fact made by the state court are "presumed to be correct," and the petitioner carries the burden of rebutting that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

sample, but with no obligation to reveal the test results to the prosecution.  Varghese conceded that a second test might consume the remaining blood.  The prosecution opposed the motion, stating that it wished to conduct further testing to corroborate its initial results, and would be unable to do so if Varghese's motion were granted.  The prosecution suggested that either a neutral laboratory agreeable to both parties or Varghese's expert test the remaining blood, but only if both parties could access and introduce at trial the data and results of that test.  The trial court found that there was a high risk that additional testing would consume the remaining blood, and concluded that the prosecution was entitled to corroborate its findings with regard to such an important piece of evidence.  Under the circumstances, the trial court determined that the prosecution's proposed compromise was reasonable, and denied Varghese's motion for the release of Item 19 for confidential testing.    Varghese  filed  a  motion  for reconsideration, which the trial court denied.  During the second motion hearing, the trial court reiterated that it would be willing to permit a neutral laboratory or the defense expert to test the blood, but only if the results were made available to both parties.  The defense declined the court's offer.

In April 2006, Varghese was convicted by a jury of first-degree murder, and use of a deadly weapon, a knife, in the commission of the murder, in violation of California Penal Code §§ 187(a) and 12022(b)(1).  He was sentenced to a prison term of 26 years to life.  Varghese appealed the conviction, arguing, *inter alia*, that the trial court erred in conditioning the use of his own expert on his disclosure of the test results to the prosecution, in violation of his right to counsel under *Prince v. Superior Court*, 10 Cal. Rptr. 2d 855 (Ct. App. 1992).  In a reasoned decision, issued on May 8, 2008, the California Court of Appeal affirmed the trial court.

*See Varghese*, 76 Cal. Rptr. 3d at 454–58.  The California Supreme Court summarily denied the petition for review. The U.S. Supreme Court subsequently denied Varghese's petition for a writ of certiorari.  *See Varghese v. California*, 555 U.S. 1143 (2009).

## B.  Habeas Procedural History

On December 10, 2009, Varghese filed a petition for a writ of habeas corpus in federal district court.  Varghese asserted that his Sixth Amendment right to counsel and Fourteenth Amendment right to due process were violated when the trial court conditioned the defense's testing of Item 19 on its disclosure of the results of that test to the prosecution.   A magistrate judge recommended that Varghese's petition be denied under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).   The magistrate judge concluded that, at the time Varghese's claim was decided by the state appellate court, there was no U.S. Supreme Court authority that decided the precise issue of "whether due process and the right to counsel are violated when a court orders that a criminal defendant be granted access to test a sample of prosecution evidence that will destroy the evidence and then require[s] the result of the test to be disclosed to the prosecution."  As such, the state court "cannot be said to have unreasonably applied the law as to the issue presented in the Petition."  The magistrate judge further rejected Varghese's argument that the principles announced in *Ake v. Oklahoma*, 470 U.S. 68 (1985), *Strickland v. Washington*, 466 U.S. 668 (1984), and *Powell v. Alabama*, 287 U.S. 45 (1932), clearly extended to the issues raised in the petition.

The district court substantially adopted the recommendation of the magistrate judge and denied the petition. Nevertheless, the district court concluded that Varghese raised "nonfrivolous constitutional arguments" and granted a certificate of appealability. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a). A district court's denial of a petition for a writ of habeas corpus is reviewed de novo, *Lopez v. Thompson*, 202 F.3d 1110, 1116 (9th Cir. 2000) (en banc), and we may affirm on any ground supported by the record, *Holley v. Yarborough*, 568 F.3d 1091, 1098 (9th Cir. 2009).

Federal courts are authorized to grant habeas corpus relief to persons in state custody under 28 U.S.C. § 2254, as amended by AEDPA, Pub. L. No. 104-132, 110 Stat. 1214. AEDPA controls this case because Varghese filed his habeas petition in 2009, after that statute became effective. *See Lindh v. Murphy*, 521 U.S. 320, 326–27 (1997). Under AEDPA, Varghese can prevail on his habeas petition only if he shows the state court's decision (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Varghese relies on the "unreasonable application" clause of section 2254(d)(1). A decision involves an "unreasonable application" of federal law if it (i) "correctly identifies the

governing rule but unreasonably applies it to a new set of facts" or (ii) "fails to extend a clearly established legal principle to a new context in a way that is unreasonable." *Himes v. Thompson*, 336 F.3d 848, 852 (9th Cir. 2003). The application must be more than incorrect or erroneous; it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "Although only Supreme Court law is binding on the states, our Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853.

AEDPA's "highly deferential standard," *Lindh*, 521 U.S. at 333 n.7, "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). We are required to affirm the denial of Varghese's habeas petition unless the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786–87. Varghese bears the burden of proof in this appeal, and the state court decision must be accorded the benefit of the doubt. *Woodford v. Visciotti*, 537 U.S. 19, 24–25 (2002) (per curiam). State court decisions are measured against the Supreme Court's precedent "as of the time the state court renders its decision." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1399 (2011) (citation and quotes omitted). We review the last reasoned state court decision, *Musladin v. Lamarque*, 555 F.3d 830, 834–35 (9th Cir. 2009), which in this case is the California Court of Appeal's May 2008 opinion.

**DISCUSSION**

Under AEDPA, we must defer to the state court's decision if a Supreme Court decision fails to (i) "squarely address the issue in the case" or (ii) "establish a legal principle that clearly extends to a new context to the extent required by the Supreme Court." *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009) (alterations and quotes omitted). If a Supreme Court's decision provides "a controlling legal standard" that is applicable to the petitioner's claim "without tailoring or modification of the standard," then the next inquiry is to decide "whether the application of that standard was objectively unreasonable, even if the facts of the case at issue are not identical to the Supreme Court precedent," *Moses*, 555 F.3d at 754 (citation and quotes omitted). "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004); *accord Richter*, 131 S. Ct. at 786.

Here, Varghese argues that the trial court's ruling regarding the testing of the blood sample violated his constitutional rights to counsel and due process. In challenging the California Court of Appeal's decision under AEDPA, Varghese must identify either a Supreme Court decision that "squarely addresses" his claim, or a legal principle, as established by a Supreme Court decision, that "clearly extends" to the circumstances of this case. *Moses*, 555 F.3d at 754. Varghese fails to do either.

### A. Supreme Court Decision Squarely Addressing Claim

The district court properly recognized that there is no U.S. Supreme Court authority that squarely addresses Varghese's claim—namely, that a criminal defendant's rights to counsel and due process are violated when the state court conditions his access to, and testing of, the prosecution's limited evidence on the disclosure of the test results to the prosecution. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established" by the Supreme Court. *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (citations and quotes omitted); *see also Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court . . . it cannot be said that the state court unreasonably applied clearly established Federal law." (citation and brackets omitted)).

### B. Interference with Effective Assistance of Counsel

In the absence of a Supreme Court decision squarely addressing Varghese's claim, we next consider whether Varghese has identified an established principle that "clearly extends" to the circumstances of this case. *Moses*, 555 F.3d at 754.

Varghese invokes a cluster of broad principles related to the rights to counsel and due process. Under the Sixth Amendment, the accused in a criminal proceeding is entitled "to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Supreme Court has long recognized that "the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair

trial." *Strickland v. Washington*, 466 U.S. 668, 684 (1984). "Government violates the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense." *Id.* at 686. "[E]ven a general standard may be applied in an unreasonable manner," *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007), but the California Court of Appeal did not unreasonably apply *Strickland* and its progeny in affirming the trial court's refusal to allow confidential defense testing of the blood sample.

Varghese argues that a core aspect of the right to effective assistance of counsel is that counsel be permitted to undertake reasonable investigations, which includes the right to employ experts for that purpose, free from state or judicial interference. According to Varghese, the attorney-client privilege and the work-product doctrine are essential components of the attorney's ability to provide effective representation. *See Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947) ("In performing his various duties . . . it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel."). Varghese contends that his rights to counsel and due process were violated when the trial court conditioned his access to the blood sample on his disclosing the test results to the prosecution, thereby "requir[ing] that defense counsel give up a most basic protection of the attorney-client relationship." As support for these principles, Varghese relies primarily on two Supreme Court decisions, *Ake v. Oklahoma*, 470 U.S. 68 (1985), and *United States v. Nobles*, 422 U.S.

225 (1975).[2]  However, *Ake* and *Nobles* do not clearly extend to the present context, *Moses*, 555 F.3d at 754, such that the state appellate court's failure to extend those principles to this case was not objectively unreasonable, *Himes*, 336 F.3d at 852; *Lockyer*, 538 U.S. at 75.

### 1.  *Ake v. Oklahoma*

In *Ake*, defense counsel informed the trial court that he planned to raise an insanity defense and asked that the court either arrange or pay for a psychiatric examination for his client, an indigent.  470 U.S. at 72.  The court refused, effectively precluding defense counsel from presenting any evidence regarding defendant's sanity at the time of the offense.  *Id.*  The Supreme Court concluded that this rendered the trial fundamentally unfair, and held that "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense."  *Id.* at 83.

*Ake* does not clearly extend to Varghese's constitutional claim.  *Ake* held that the state must in some circumstances

---

[2] During oral argument, Varghese's counsel identified *Ake* and *Nobles* as the two strongest Supreme Court cases supporting Varghese's position. Varghese further relies on *Smith v. McCormick*, 914 F.2d 1153 (9th Cir. 1990).  But because *McCormick*, a circuit case, is not clearly established Supreme Court precedent, it is not controlling here.  *McCormick* is "relevant persuasive authority," *Himes*, 336 F.3d at 853, but it adds little to Varghese's argument that the state court's decision was objectively unreasonable.  On appeal, Varghese does not renew his argument that *Powell v. Alabama* clearly extends to this case.

provide indigent defendants with access to a particular kind of expert, a psychiatrist, to ensure fundamental fairness at trial. Varghese neither asserts that he was indigent, nor claims that he asked the state to provide a psychiatrist or any other kind of expert to assist in the preparation of his defense. He had, in fact, retained his own DNA expert, Dr. Blake. Even if this expert was unable to conduct a confidential DNA test, he could help defense counsel evaluate the methodology used by the state's lab, decide whether to attack it at trial, and prepare for cross-examination of the state's lab technician. *See United States v. Chischilly*, 30 F.3d 1144, 1152–53 (9th Cir. 1994); *cf. Ake*, 470 U.S. at 81. This is simply not a case, as was *Ake*, where the defendant lacked "the raw materials integral to the building of an effective defense." *Ake*, 470 U.S. at 77.

Second, *Ake* did not concern expert testing of physical evidence, much less testing that would consume a vanishing quantity of such evidence. *Ake* thus provided the state court with no guidance on how to balance the defendant's interest in conducting his own DNA test with the state's legitimate interest in corroborating its initial results. Even if we accept Varghese's argument that *Ake* acknowledges the importance of expert assistance generally—as opposed to the assistance of psychiatric experts in particular—that case simply did not involve the tradeoffs at stake here.

Varghese contends that the state's interest in additional testing is weak because (1) it already had a reliable test and (2) Varghese agreed not to challenge the state's blood evidence if his own testing confirmed the state's results. But the state, which has to prove its case beyond a reasonable doubt, has an interest in bulletproofing its evidence that the blood recovered from the crime scene belonged to Varghese.

*See* John Devlin, *Genetics and Justice: An Indigent Defendant's Right to DNA Expert Assistance*, 1998 U. Chi. Legal F. 395, 407 (1998) (noting the prosecutor ordered multiple tests of the DNA evidence in the O.J. Simpson trial). Nothing in *Ake* suggests that, where physical evidence is concerned, a defendant's interest in confidential testing trumps the state's interest in confirming its results.

## 2. *United States v. Nobles*

In *Nobles*, the defense sought to impeach the prosecution's key witnesses using statements a defense investigator obtained from the witnesses. 422 U.S. at 227. The issue before the Supreme Court was whether, under the circumstances, a federal trial court could compel the defense to reveal the relevant portions of the investigator's report for the prosecution's use in cross-examining the investigator. *Id.* The defense argued, *inter alia*, that the work-product doctrine exempted the investigator's report from disclosure at trial. *Id.* at 236. The *Nobles* Court concluded that because the defense had voluntarily elected to present the investigator as a witness, the defense had waived the privilege with respect to matters covered in the investigator's testimony. *Id.* at 239–40.

Invoking the principles in *Nobles*, Varghese argues that by conditioning the defense's access to the blood sample on disclosure of the test results, the trial court compelled surrender of his attorney's privileges and therefore violated his right to effective assistance of counsel. We note that the Supreme Court developed the work product doctrine to shield counsel's private memoranda from the liberal discovery permitted by the Federal Rules of Civil Procedure. The Court grounded the doctrine not in the Constitution, but on the

assumption that the drafters of the Federal Rules did not seek to alter "the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests." *Hickman*, 329 U.S. at 511; *see also* Jeff A. Anderson et al., *The Work Product Doctrine*, 68 Cornell L. Rev. 760, 765–79 (1983). The doctrine governs discovery and disclosure in *federal* cases, both civil and criminal, and it cannot support a state prisoner's habeas claim any more than a violation of the Federal Rules of Evidence could.

But the *Nobles* Court also considered, in a footnote, whether the forced disclosure of the investigator's report violated the Sixth Amendment right to counsel. As Varghese does here, the defendant in *Nobles* argued that such a disclosure was unconstitutional because it would "compromise counsel's ability to investigate and prepare the defense case thoroughly." *Nobles*, 422 U.S. at 240 n.15. The Court rejected this claim, invoking notions of waiver. Once the defendant made a "voluntary election" to present the investigator's report at trial, he could no longer hide behind the attorney-client relationship to shield this information from the prosecution. *Id.*

This constitutional holding does not clearly extend to the circumstances of Varghese's case. *Nobles* decided only that the Sixth Amendment does not prohibit the disclosure of a defense investigator's report, containing his distillation of witness interviews, when the defendant calls the investigator to testify at trial. The case does not address whether a defendant may withhold expert materials of a wholly different kind—scientific test results—if the defendant decides *not* to use those results at trial. A reasonable jurist might well conclude that disclosure of an expert's test results is less of an

intrusion on the attorney-client relationship than disclosure of the expert's subjective impressions or mental processes would be.

This is especially true in Varghese's case, where the state trial court

> did not order the reports or observations of the expert be turned over to the prosecution. It ordered only the result of the test to be revealed. In doing so, the court granted the defendant the right to test the results and keep all of its work product and reports confidential. At the same time it foreclosed the possibility that a test result matching that of the prosecution's expert would be destroyed and the People left without the ability to corroborate its findings if the defense were to challenge at trial the prosecution expert.

*Varghese*, 76 Cal. Rptr. 3d at 458. A laboratory's "bottom line result of the test," *id.* at 457, which would presumably include DNA quantification data, is not substantially equivalent to the expert's "mental processes," *Nobles*, 422 U.S. at 238, as it may be reflected in the expert's reports, observations, impressions, or communications made in the assistance of the defense.

In response, Varghese argues that the California Court of Appeal's notion that the trial court ordered that only the test results be disclosed is "factually wrong." Under AEDPA, the state court's factual determinations, including the appellate court's interpretation of what the trial court actually ordered,

are "presumed to be correct," unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Hernandez v. Small*, 282 F.3d 1132, 1135 n.1 (9th Cir. 2002). Varghese does not satisfy this burden because he fails to provide clear and convincing evidence from the record available to the appellate court that the trial court ordered anything beyond the test results. Varghese's citation to the prosecution's request that both parties be allowed "to access and introduce in full at trial all of the data and testing conducted on those items" does not suggest that the prosecution requested full access to the expert's reports, observations, or to any confidential materials involving the expert. As the Supreme Court noted with respect to the defense in *Nobles*, Varghese "fails to recognize the limited and conditional nature of the court's order." *Nobles*, 422 U.S. at 240 n.15. The trial court in this case did not authorize a "general fishing expedition into the defense files or indeed even into the defense [expert's] report." *Id.* at 240 (citation and quotes omitted). Indeed, the trial court rejected the defense's argument that if it adopted the prosecution's proposed compromise, it "somehow opens the door to allow the People to go after anything above and beyond the test results with Dr. Blake, to invade that attorney-client expert situation." The trial court interpreted the prosecution's proposed compromise as being confined to its ability to "retest" and "verify and validate" its first test. The defense averred that it wanted the remainder of the blood sample, without "agree[ing] that the People would have access to the *results* of Mr. Blake's analysis." (emphasis added). Ultimately, the trial court required Varghese to disclose the test results if he opted to use his own expert, and nothing more. *See* Tr. Mot. Proceedings (July 1, 2005), at 62–63 ("We're talking about verification of the results of the initial examination."); *id.* at 65–66 ("I'm willing to issue an order

allowing Dr. Blake to test [the blood sample] as long as the results are available to everybody.").**³**

In sum, the trial court sanctioned a compromise that was confined to the purpose of corroborating the results of the first DNA test, and was a response to the limited blood sample available to both sides. This was an exercise of discretion that was not objectively unreasonable under the circumstances, and is consistent with the purpose animating the right to effective assistance of counsel, which is "to ensure a fair trial." *Strickland*, 466 U.S. at 686. Although reasonable jurists may disagree as to whether this was an abuse of the trial court's discretion, the standard under AEDPA requires us to defer to the appellate court's determination that it was not in the absence of contrary Supreme Court authority.

---

[3] Varghese further suggests that the appellate court's decision was unreasonable because the defense offered a stipulation during his motion hearing that obviated any need for the prosecution to conduct a second test of the blood sample. Specifically, Varghese argues that the defense stated that if he were allowed to perform confidential testing using his own expert, Dr. Blake, then depending on the test results, he would either (i) call Dr. Blake to testify and his test results would be put into evidence, or (ii) "the defense would not call an expert and then the People's evidence would go essentially unchallenged." However, Varghese's argument is not tethered to any relevant Supreme Court case and thus is not relevant to our AEDPA analysis. Moreover, an offer not to call a DNA expert by the defense does not guarantee that the prosecution's DNA test results would go fully unchallenged because, for example, Mr. Cornacchia's credibility might be attacked, in which case his testimony validating the prosecution's first test could be undermined. A corroborating test on the remaining blood sample would then be crucial in bolstering the results of the prosecution's initial DNA test. Since the blood sample was the prosecution's evidence, the prosecution was entitled to render a key piece of evidence highly credible by obtaining corroborating results from a second test.

## C.  Choosing between Two Constitutional Rights

Varghese further relies on *Simmons v. United States*, 390 U.S. 377 (1968), for the principle that it is unconstitutional to force a defendant to choose between two rights.  In *Simmons*, the criminal defendant challenged the constitutionality of the trial court's admission of his motion-to-suppress testimony on the issue of his guilt.  390 U.S. at 389.  The Court held that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection."  *Id.* at 394.  The Court reasoned that, given the defendant's situation, the defendant "was obliged either to give up what he believed, with the advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination."  *Id.*  The Court noted that "[i]n these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another."  *Id.*

Varghese's constitutional claim does not implicate his Fourth Amendment privilege against unreasonable searches and seizures or his Fifth Amendment right against self-incrimination.  Varghese's claim concerns his right to access and test limited evidence using his own expert, without disclosing the tests results to the prosecution.  Nevertheless, abstracting the general principle that a defendant cannot be forced to choose between two constitutional rights, *id.*, Varghese argues that the state impermissibly sought to force him to choose between the "right to have defense counsel conduct a reasonable investigation" and the "right to maintain the degree of privacy in defense counsel's representation that

is essential to effective representation." Even were we to accept Varghese's contention that *Simmons* establishes such a broad rule, there is no merit to his argument because he was not foreclosed from using his own expert in testing the blood sample or in developing his defense.

## CONCLUSION

The Supreme Court has not squarely addressed Varghese's claim or articulated a rule that clearly extends to the present case. *Moses*, 555 F.3d at 754. The California Court of Appeal's decision therefore cannot be said to have unreasonably applied clearly established federal law under AEDPA. *Himes*, 336 F.3d at 852. Accordingly, we defer to the state court, and affirm the district court.

**AFFIRMED.**