Filed 4/4/25

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA


THIRD APPELLATE DISTRICT


(Sacramento)

----


| | |
|---|---|
| JOSEPH LACOUR, | C101343 |
| Petitioner, | (Super. Ct. No. 23FE010323) |
| v. | |
| THE SUPERIOR COURT OF SACRAMENTO COUNTY, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

---

\* Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part I.

1

ORIGINAL PROCEEDING in mandate.  Petition granted with directions.  Martin Tejeda, Judge.

Law Office of Monica McMillan, Monica McMillan; Gina C. Teddington for Petitioner.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Senior Assistant Attorney General, Christopher J. Rench, Supervising Deputy Attorney General, Jamie A. Scheidegger, Deputy Attorney General for Respondent.

Petitioner Joseph Lacour seeks a writ of mandate directing the trial court to vacate its order denying his "Application for Mental Health Diversion" (motion) under Penal Code sections 1001.35 and 1001.36, filed in his pending criminal case.[1]  In its ruling on petitioner's motion for diversion, the trial court found that petitioner had been diagnosed with a qualifying mental disorder within the previous five years.  While the court recognized the diagnosis gave rise to a presumption that petitioner's mental disorder was a significant factor in the commission of the offenses (§ 1001.36, subd. (b)(2)), the court denied diversion because it found that the statutory presumption had been overcome by clear and convincing evidence that petitioner's mental disorder was not a motivating factor, causal factor, or contributing factor to his involvement in the alleged offenses.

In the published portion of this opinion, we agree with petitioner that the trial court's clear and convincing evidence finding constituted an abuse of discretion.  The court's finding was based only on the absence of evidence to support the finding that petitioner's mental disorder *was* a motivating, causal, or contributing factor to his involvement in the offenses.  That finding does not constitute substantial evidence from which a reasonable factfinder could have found it highly probable that petitioner's mental disorder *was not* a motivating, causal, or contributing factor to his involvement in the

---

[1]  Further undesignated statutory references are to the Penal Code.

2

alleged offenses. Because substantial evidence does not support the trial court's ruling, we will issue a writ directing the trial court to vacate its order denying diversion and to conduct a new hearing on petitioner's motion.

## FACTS AND PROCEEDINGS

*July 2023 Burglaries*

The following facts are taken from the People's opposition to petitioner's motion. On July 5, 2023, at approximately 3:15 a.m., officers responded to an apartment complex parking lot following a report of multiple vehicle burglaries. The caller described the three suspects and their car. A total of 11 cars had been broken into; the majority were damaged, and some were missing items that had been inside.

The car described by the caller was pulled over. Petitioner was driving, a minor was sitting in the front passenger seat, and codefendant Dominik Warda was sitting in the rear passenger seat. There were several pairs of black work gloves and black masks inside the vehicle. Officers searched the vehicle and found items from the cars that had been broken into, and a stolen firearm loaded with seven rounds in a backpack on the rear passenger side floorboard.

Surveillance footage showed all three suspects in the parking lot, and petitioner walking toward the passenger side of a vehicle; he was wearing the same clothing that he was wearing when their car was pulled over. Witnesses identified all three suspects in an in-field show-up. Petitioner was identified as the person reaching into a front window and taking something. Petitioner told officers that he had thrown a green window punch into the trunk of the patrol car. Petitioner had scratches and blood on his hands, and officers found a piece of window glass in his hoodie. Warda also had broken glass on his clothing and a black window punch in his pants pocket.

Petitioner made the following statements: "I picked up my friend past the apartments after I picked up some woods. Everything in the driver's seat is mine. The car belongs to my girlfriend . . . . I just got out here from Houston a couple days ago with

my cousin . . . . [My cousin] is staying with me at my girlfriend's house. I wasn't at the apartment complex. Do you have proof of me being in there. I wasn't going to try to shake y'all or nothing like that. I don't care what happens to me, but I need him to go home. Im [*sic*] going to be honest with you bro, me and [my cousin] didn't do shit. I know y'all found [Warda's] gun in there. [¶] I wasn't driving that fast down the street. I've never been detained in handcuffs like this. I have been pulled over many times. I don't need to think, whatever y'all want to throw at me is what it is. Y'all don't have me on no camera or anything."

*August 2023 Burglaries*

The following facts are described in petitioner's motion. On August 30, 2023, petitioner was tracked via a stolen Apple air tag that pinged his location. He was questioned by law enforcement at his girlfriend's mother's house, where he was living at the time. Multiple stolen items, including wallets, identification cards, and credit cards, were found in a backpack in the house.

*Criminal Charges*

As to the July 2023 burglaries, petitioner was charged with carrying a concealed firearm in a vehicle (§ 25400, subd. (a)(1); count one), with the further allegation that the defendants were not registered owners of the firearm (§ 25400, subd. (c)(6)), and 11 counts of second degree burglary of different vehicles (§ 459; counts two through twelve). The complaint was consolidated with a separate complaint alleging 12 counts of second degree burglary (§ 459; counts thirteen through twenty-four) related to the August 2023 burglaries.

*Petitioner's Motion for Mental Health Diversion*

On March 7, 2024, petitioner filed his motion for mental health diversion. (§§ 1001.35; 1001.36.) The motion attached petitioner's mental health diagnosis and treatment plan, which reflected that petitioner had been diagnosed with "Bipolar II disorder . . . current episode depressed with moderate-severe anxious distress and co-

occurrence of Posttraumatic Stress disorder [(PTSD)]." The treatment plan identified the following symptoms: "depressed mood, loss of interest in activities once enjoyed, loss of appetite, fluctuates between insomnia and hypersomnia, fatigue, feels worthless, thoughts of death, elevated mood, decreased need for sleep, more talkative, thinks about everything, increase in goal directed activities, excessive worry, some on edge, hard to concentrate, worried something bad can happen, intrusive distressing memories, nightmares, avoidance of distressing memories, avoidance of external reminders of trauma, persistent negative emotional state, feels detached from others, inability to feel positive emotions, hypervigilance, diminished participation in significant activities, problems with concentration, sleep disturbance, depersonalization."

The prosecution opposed the motion.

*Hearing on Petitioner's Motion for Mental Health Diversion*

On April 16, 2024, the trial court held a hearing on the motion. Petitioner was 20 years old at the time of the hearing. He was abused by his father until his father left the family when petitioner was eight years old, and he was sexually molested later in life. He was raised in poverty, and he received no help from family or friends, except for a girlfriend whose mother has tried to help him. He was diagnosed with bipolar II disorder and PTSD, which cause severe depression, impulsive behavior, and feelings of hopelessness, especially for those, like petitioner, with no support system. Petitioner had tried to work, but the onset of his mental health conditions had been a prohibitive factor.

Prior to the offenses, petitioner unexpectedly found out that his girlfriend was pregnant, which caused him to feel hopeless. Feeling hopeless and depressed, and bolstered by the presence of others who had planned the burglaries, petitioner went along because he had little else to live for. Petitioner had no criminal record, and he urged the court to ensure that he received mental health treatment. Petitioner had met with a psychiatrist, and counsel indicated he was amenable to and needed treatment.

The prosecutor objected to diversion based on "a lack of nexus." She argued that petitioner's crimes were not "an impulsive crime that was brought on by his bipolar disorder or PTSD," and there was "no indication from the police reports that the defendant's hopelessness or depression caused him and his coconspirators to break into over 30 cars that night." Rather, the defendants arrived in the middle of the night with window punches, gloves, and face masks, and they worked together targeting different cars, indicating that the burglaries were planned and strategic.

The prosecutor further argued that petitioner's treatment plan was insufficient because it included only a two-word diagnosis, did not include the bases for the diagnoses or the provider's qualifications, and did not include any plans for medication to treat his mental disorders. Additionally, because there was no statement from the provider that petitioner's mental health diagnosis caused him to commit the crime, there was no presumption that his mental disorder was a factor in his commission of the offenses. She added that this was the first time petitioner had been diagnosed and had not been medicated previously, although she acknowledged petitioner was only 20 years old.

Petitioner (through counsel) responded that the trial court had previously accepted diagnoses from the Department of Behavioral Health that did not provide the reasoning, and petitioner had met with a psychiatrist for the purpose of developing a plan for medication. He added that he had a qualified mental health diagnosis, and therefore the prosecution was required to prove by clear and convincing evidence that his mental disorder did not cause him to be involved in his offenses.

*Trial Court Ruling*

The trial court denied petitioner's motion "on nexus grounds." The court found that petitioner's treatment plan met the standard required in the mental health diversion process and that petitioner had been diagnosed with a qualifying mental health disorder within the past five years. Accordingly, the court recognized that petitioner's mental disorder was presumed to be a significant factor in the commission of the charged

6

offenses, which required the prosecution to "show by clear and convincing evidence that the mental health disorder was not a motivating factor, causal factor, contributing factor in the commission of the charged offense[s]." The court further observed that in analyzing that issue, it was authorized to "consider evidence of this disorder, the intent and purposes behind mental health diversion, the police reports, preliminary hearing transcripts if they're present -- I don't believe there were any here -- statements by the defendant's mental health providers, medical records by a qualified mental health expert, and evidence that the defendant displayed or did not display symptoms consistent with a mental health disorder at the time or near the commission of the offense."

The trial court subsequently denied petitioner's motion, reasoning as follows: "Here I don't know who planned it. I don't know that [petitioner] didn't plan it. I don't know one way or the other. I do know that people showed up with black work gloves and black masks and tools in order to break into vehicles. [¶] It appears as though reading from the summary of the police reports that [petitioner] also gave a statement as well, indicating that the police did not have him on camera or anything. And that he was -- and asking if they had proof of him being present at the time of the commissions of these crimes. [¶] So I do not see anything in the police report to indicate that he was actually suffering from a mental health diagnosis and exhibiting those at the time of the offense. So I'm going to deny the mental health diversion application at this time."

*Petition for Writ of Mandate and Subsequent Procedural Background*

On June 14, 2024, petitioner filed a petition in this court, seeking a peremptory writ of mandate directing the trial court to vacate its previous order and either grant the motion for mental health diversion or show cause why the motion should not be granted.

We requested that the Attorney General file opposition to the petition. In addition to addressing the merits, we asked the Attorney General to address the following issue: "what evidence, if any, supports the trial court's ruling, including whether an absence of evidence is sufficient to overcome the statutory presumption."

7

The Attorney General opposed the petition, and petitioner filed his reply.  We then issued an order to show cause, and the Attorney General filed a written return.

The case was fully briefed in December 2024 and was assigned to the current panel in February 2025.

**DISCUSSION**

I

*No Adequate Remedy at Law*

The Attorney General argues that we should deny the petition because the matter is not properly heard on mandamus.  We decline to do so.

Generally, a writ of mandate will lie when "(1) there is no plain, speedy and adequate alternative remedy, (2) the public official has a legal and usually ministerial duty to perform and (3) the petitioner has a clear and beneficial right to performance." (*Menefield v. Foreman* (2014) 231 Cal.App.4th 211, 216-217; see Code Civ. Proc., § 1086 ["The writ must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law"]; *Villery v. Department of Corrections & Rehabilitation* (2016) 246 Cal.App.4th 407, 414 [existing cases typically address whether an alternative remedy is " 'plain, speedy, and adequate' "].)  Writ review is also appropriate where " ' "the petitioner will suffer harm or prejudice in a manner that cannot be corrected on appeal." ' " (*Baeza v. Superior Court* (2011) 201 Cal.App.4th 1214, 1221; see *Prince v. Superior Court* (1992) 8 Cal.App.4th 1176, 1179 ["Extraordinary relief is appropriate if the trial court's ruling is clearly erroneous as a matter of law and the petitioner will suffer substantial prejudice"].)  However, a "remedy is not inadequate merely because more time would be consumed by pursuing it through the ordinary course of law than would be required in the use of an extraordinary writ." (*Hogya v. Superior Court* (1977) 75 Cal.App.3d 122, 128.)  " ' " 'The question whether there is a "plain, speedy and adequate remedy in the ordinary course of law," within the meaning of the statute, is one of fact, depending upon the circumstances of each particular case, and the

8

determination of it is a matter largely within the sound discretion of the court.' " ' "
(*Flores v. Department of Corrections & Rehabilitation* (2014) 224 Cal.App.4th 199,
206.)

The Attorney General argues that mandamus is inappropriate here because the
decision of whether to grant diversion was a discretionary, not ministerial, act. (See
§ 1001.36, subd. (a) ["court may, in its discretion, and after considering the positions of
the defense and prosecution, grant pretrial diversion to a defendant"].) However, while
"[m]andate is not available to compel the exercise of discretion on the part of a public
official, . . . *it is available to correct an abuse of discretion.*" (*Kong v. City of Hawaiian
Gardens Redevelopment Agency* (2002) 101 Cal.App.4th 1317, 1326, italics added.) That
is because an abuse of discretion is not an exercise of discretion, but rather " ' "is action
beyond the limits of discretion, and it is settled that the writ will issue to correct such
abuse if the facts otherwise justify its issuance." ' " (*People v. Superior Court* (*Meraz*)
(2008) 163 Cal.App.4th 28, 46.) Because petitioner contends the trial court abused its
discretion when it denied his motion, mandate is available to correct that abuse, if such an
abuse has occurred.

The Attorney General also argues that mandamus is inappropriate here because
petitioner has an adequate legal remedy in the form of a direct appeal. Petitioner
responds that appeal from the judgment after trial of the current offenses is not an
adequate remedy because his treatment would be delayed if he were required to wait until
a direct appeal to obtain review of the order denying his motion, during which time he
could spend a significant amount of time in prison. Indeed, the express legislative
purpose of mental health diversion is to "[i]ncrease[] diversion of individuals with mental
disorders to mitigate the individuals' entry and reentry into the criminal justice system
while protecting public safety," and "[p]rovid[e] diversion that meets the unique mental
health treatment and support needs of individuals with mental disorders." (§ 1001.35,
subds. (a), (c).) Thus, section 1001.36 offers persons with a qualifying mental health

9

disorder " ' "dramatically different and more lenient treatment." ' " (*People v. Doron* (2023) 95 Cal.App.5th 1, 7.) Petitioner adds that mental health diversion is a novel program that calls for quicker appellate oversight. (See *Wade v. Superior Court* (2019) 33 Cal.App.5th 694, 707 [novelty of military diversion program and likelihood that issues will repeat as defendants seek the chance to participate in the program warrant prompt resolution via writ of mandate].)

In light of the statutory aims of the mental health diversion statute, the prejudice petitioner will suffer in the absence of prompt resolution of his claims, and the novelty of mental health diversion supporting prompt resolution of emerging issues, we agree with petitioner that writ relief is appropriate here.

II

*Mental Health Diversion*

Petitioner contends the trial court abused its discretion in denying his motion for mental health diversion because it misapplied the law, and substantial evidence did not support its ruling. As we will explain, we agree that substantial evidence does not support the trial court's ruling.

A. *Section 1001.36*

Effective June 27, 2018, the Legislature added sections 1001.35 and 1001.36, which promote and authorize trial courts to grant "pretrial diversion" to defendants diagnosed with qualifying mental disorders. (Stats. 2018, ch. 34, § 24.) In this context, " '[p]retrial [d]iversion' means the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment." (§ 1001.36, subd. (f)(1).)

Effective January 1, 2023, section 1001.36 was amended by Senate Bill No. 1223 (Stats. 2022, ch. 735, § 1).[2] As amended, section 1001.36, subdivision (a) permitted a trial court, after considering the parties' positions, to "grant pretrial diversion to a defendant pursuant to this section if the defendant satisfies the eligibility requirements for pretrial diversion set forth in subdivision (b) and the court determines that the defendant is suitable for that diversion under the factors set forth in subdivision (c)."

Section 1001.36, subdivision (b) set forth two requirements that must be satisfied for a defendant to be eligible for mental health diversion. First, the defendant must have been "diagnosed with a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, including, but not limited to, bipolar disorder, . . . , or post-traumatic stress disorder . . . . Evidence of the defendant's mental disorder shall be provided by the defense and shall include a diagnosis or treatment for a diagnosed mental disorder within the last five years by a qualified mental health expert."

Second, the "defendant's mental disorder was a significant factor in the commission of the charged offense. If the defendant has been diagnosed with a mental disorder, the court shall find that the defendant's mental disorder was a significant factor in the commission of the offense unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense. A court may consider any relevant and credible evidence, including, but not limited to, police reports, preliminary hearing transcripts, witness statements, statements by the defendant's mental health treatment provider, medical records, records or reports by qualified medical experts, or evidence that the

---

[2] The statute was amended again in 2024 and 2025; those amendments are not relevant here.

11

defendant displayed symptoms consistent with the relevant mental disorder at or near the time of the offense." (§ 1001.36, subd. (b)(2).)

If the defendant satisfies the statutory eligibility requirements, the court must then consider whether the defendant is suitable for pretrial diversion under the criteria set forth in section 1001.36, subdivision (c), including: (1) "In the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment" (*id.*, subd. (c)(1)); (2) "The defendant consents to diversion and waives the defendant's right to a speedy trial" (*id.*, subd. (c)(2)); (3) "The defendant agrees to comply with treatment as a condition of diversion" (*id.*, subd. (c)(3)); and (4) "The defendant will not pose an unreasonable risk of danger to public safety . . . if treated in the community" (*id.*, subd. (c)(4)).

If the defendant makes a prima facie showing that they meet all the statutory eligibility and suitability criteria, the court may still exercise its discretion to deny diversion. (*People v. Sarmiento* (2024) 98 Cal.App.5th 882, 892.) However, "this 'residual' discretion must be exercised ' "consistent with the principles and purpose of the governing law." ' [Citations.] That purpose includes a strong legislative preference for treatment of mental health disorders because of the benefits of such treatment to both the offending individual and the community. Where the court chooses to exercise this residual discretion to deny diversion, its statement of reasons should reflect consideration of the underlying purposes of the statute and explain why diversion would not meet those goals." (*Id.* at pp. 892-893.)

B. *Standard of Review*

A trial court's ruling on a request for mental health diversion is reviewed for abuse of discretion, and the court's factual findings are reviewed for substantial evidence. (*People v. Moine* (2021) 62 Cal.App.5th 440, 448-449.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person

could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) However, it is also true that "[a] court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence." (*Moine*, at p. 449.) Additionally, "[a]ction that transgresses the confines of the applicable principles of law is outside the scope of discretion" and constitutes an abuse of discretion. (*People v. Jacobs* (2007) 156 Cal.App.4th 728, 737.)

"When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011.) In "making this assessment the appellate court must view the record in the light most favorable to the prevailing party below and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Id.* at p. 996; see *In re Isayah C.* (2004) 118 Cal.App.4th 684, 695 [clear and convincing evidence requires "a high probability, such that the evidence is so clear as to leave no substantial doubt"].)

Accordingly, the issue before us is whether the record as a whole contains substantial evidence from which a reasonable factfinder could have found it highly probable that petitioner's mental disorder "was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." (§ 1001.36, subd. (b)(2).)

C. *Analysis*

As we set forth *ante*, here the trial court found that petitioner had been diagnosed with a qualifying mental illness, and it recognized that, under subdivision (b)(2) of section 1001.36, it was required to "find that the defendant's mental disorder was a significant factor in the commission of the offense unless there is clear and convincing

13

evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." The court observed that it was authorized to consider "any relevant and credible evidence, including, but not limited to, *police reports*, preliminary hearing transcripts, witness statements, statements by the defendant's mental health treatment provider, medical records, records or reports by qualified medical experts, or *evidence that the defendant displayed symptoms consistent with the relevant mental disorder at or near the time of the offense*." (§ 1001.36, subd. (b)(2), italics added.)

The trial court then impliedly found clear and convincing evidence that petitioner's qualifying mental disorder was not a motivating, causal, or contributing factor to his involvement in the alleged offenses. In support of that determination, the court found that while there was no evidence as to who planned the alleged offenses, the individuals involved "showed up with black work gloves and black masks and tools in order to break into vehicles." The court also noted petitioner's statements to law enforcement, including that they "did not have him on camera or anything," and asking, "if they had proof of him being present at the time of the commissions of these crimes." In his opposition to the petition, the Attorney General observes that petitioner did not tell law enforcement that he was hopeless or depressed, but rather attempted to avoid apprehension, denied being at the scene of the crime, and told officers they did not have him on camera.

Based on those facts, the trial court found: "So I do not see anything in the police report to indicate that [petitioner] was actually suffering from a mental health diagnosis and exhibiting those [*sic*] at the time of the offense."[3]

---

[3] The Attorney General asserts the trial court found that the police reports noted petitioner did not appear to be suffering from any symptoms of a mental health disorder, but that assertion is incorrect. The police reports are not in the record, and therefore we

In our request for preliminary opposition to the petition for writ of mandate, we asked the Attorney General to "address what evidence, if any, supports the trial court's ruling, including whether an absence of evidence is sufficient to overcome the statutory presumption." In response, the Attorney General initially acknowledges that the trial court's ruling was based on an absence of evidence that petitioner's mental disorder was a factor in the commission of the offense. Specifically, he observes: "the [trial] court found that there was no evidence that petitioner's actions were caused by his mental health disorder," and then: "the trial court engaged the statutory language and found that there was no evidence to indicate that petitioner 'was actually suffering from a mental health diagnosis and exhibiting [symptoms of] those at the time of the offense[s].' " However, in direct response to our question, the Attorney General asserts that this is *not* a case where the court determined that the absence of evidence overcame the statutory presumption, but rather that affirmative evidence supported the trial court's findings.

Regardless of how the trial court's ruling is characterized, the record lacks substantial evidence from which a reasonable factfinder could have found it highly probable that petitioner's mental disorder "was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." (§ 1001.36, subd. (b)(2); see *In re Isayah C.*, *supra*, 118 Cal.App.4th at p. 695.)

Initially, while substantial evidence supports the trial court's finding that the perpetrators wore masks and gloves and possessed tools, suggesting that the crimes were planned, the court also found there was no evidence regarding *who* planned the burglaries. Therefore, it cannot be determined with any degree of certainty that petitioner planned the burglaries, or that his involvement in the scheme was anything other than an impulsive decision brought about by his mental disorder.

---

cannot refer to them. However, the trial court did not find the police reports stated that petitioner did not appear to be suffering from a mental disorder, but rather that the police reports did not affirmatively indicate that petitioner *was* suffering from a mental disorder.

The trial court noted petitioner's statements to law enforcement; the Attorney General similarly argues that petitioner did not declare to law enforcement that he was feeling hopeless or depressed. But petitioner did not provide any indication that he *did not* feel those feelings, or that feelings of hopelessness and depression did not contribute to the commission of the alleged offenses. The Attorney General offers no authority for the proposition that a person suffering from a mental disorder will declare their feelings of depression or hopelessness to law enforcement when confronted, and there was no evidence presented in the trial court to that effect. Moreover, the record reflects that petitioner said to law enforcement, "I don't care what happens to me," and "whatever y'all want to throw at me is what it is," which could be understood to mean that petitioner *did* feel hopeless or depressed.

The Attorney General argues that petitioner attempted to evade apprehension and denied committing the crime, but he offers no authority for the proposition that a person suffering from bipolar disorder or PTSD will not attempt to avoid apprehension or deny having committed a crime. And again, nothing appears in the record before us on review that supports that assertion.

The trial court ultimately found that *nothing in the police report indicated that petitioner was* suffering from a mental disorder at the time of the offenses. But the absence of evidence proving that petitioner's mental disorder *was* a factor in the commission of the offenses is not substantial evidence supporting a finding by clear and convincing evidence that petitioner's mental disorder *was not* a factor in the commission of the offenses. It was the prosecution's burden to present such clear and convincing evidence. (§ 1001.36.) By finding that the statutory presumption had been overcome by the mere absence of evidence demonstrating that petitioner's mental illness *was* a factor in the alleged offenses, the court effectively shifted the burden to petitioner to affirmatively prove that his mental disorder contributed to the offenses. Because no substantial evidence supported the court's finding that the statutory presumption had been

16

overcome by clear and convincing evidence, the denial of petitioner's motion was an abuse of discretion.

The Attorney General raises other arguments in support of the trial court's denial of petitioner's motion for pretrial diversion, which we address only briefly as they are not relevant to the trial court's order before us. He argues that the record is not clear that petitioner had been diagnosed with a specific mental disorder within the last five years based on what he perceives as inadequate proof of the diagnosis. The trial court found that requirement to be satisfied; its finding was not an abuse of discretion.

As to petitioner's suitability for diversion under section 1001.36, subdivision (c), the Attorney General argues that because the trial court found petitioner was not suffering from a mental disorder at the time of the alleged offenses, petitioner could not prove that "the defendant's symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment." (§ 1001.36, subd. (c)(1).) But as we have discussed, substantial evidence did not support the trial court's finding that the statutory presumption had been overcome.

Next, the Attorney General argues that petitioner failed to present evidence that his bipolar disorder or PTSD could be abated by mental health treatment. The trial court will be able to address that issue on remand, although we note that the provider did state in petitioner's treatment plan: "I believe [petitioner] can be treated in the community if [petitioner] agrees to comply with this plan."

Finally, the Attorney General argues that the trial court could exercise its residual discretion to deny mental health diversion, even if all other qualifications are met. We express no opinion as to how the trial court should exercise its residual discretion, or whether petitioner's motion for diversion should ultimately be granted. But we will not deny the petition solely on the basis that the court could possibly have denied mental health diversion on other grounds had it not abused its discretion in finding that the statutory presumption had been overcome.

17

## DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to vacate its April 16, 2024, order denying petitioner's Application for Mental Health Diversion and hold a new hearing on petitioner's motion in accordance with this opinion.

/s/
_____
Duarte, J.

We concur:

/s/
_____
Earl, P.J.

/s/
_____
Boulware Eurie, J.